# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

BON SECOURS DEPAUL MEDICAL CENTER, INC.  )
150 Kingsley Lane                        )
Norfolk, VA  23505                       )
                                         )
BON SECOURS MARYVIEW MEDICAL CENTER      )
3636 High Street                         )
Portsmouth, VA  23707                    )
                                         )
BON SECOURS MEMORIAL REGIONAL            )
MEDICAL CENTER, INC.                     )
8260 Atlee Road                          )
Mechanicsville, VA 23116                 )
                                         )    Case No.: 1:18-cv-2285
BON SECOURS-RICHMOND                     )
COMMUNITY HOSPITAL INC.                  )
1500 N. 28th Street                      )
Richmond, VA 23223                       )
                                         )
BON SECOURS-ST. FRANCIS                  )
MEDICAL CENTER, INC.                     )
13710 St Francis Boulevard               )
Midlothian, VA 23114                     )
                                         )
MARY IMMACULATE HOSPITAL, INC.           )
2 Bernardine Drive                       )
Newport News, VA  23602                  )
                                         )
OUR LADY OF BELLEFONTE HOSPITAL, INC.    )
1000 St. Christopher Drive               )
Ashland,  KY 41101                       )
                                         )
ST. FRANCIS HOSPITAL, INC.               )
1 Saint Francis Drive                    )
Greenville, SC 29601                     )
                                         )
                                         )
                    Plaintiffs,          )
                                         )
            v.                           )

ALEX M. AZAR II, Secretary                              )
United States Department of  Health and Human Services,  )
200 Independence Avenue, S.W.                           )
Washington, DC  20201,                                 )
                                                       )
                    Defendant.                          )
_____)

## COMPLAINT

## I.    INTRODUCTION AND NATURE OF SUIT

1.    Plaintiffs seek judicial review of a final determination of the Secretary of the Department of Health and Human Services (the "Secretary") regarding whether the Centers for Medicare & Medicaid Services ("CMS") unlawfully treats days for which Medicare Part A did not make payment, namely Medicare Advantage days which are paid under Medicare Part C, as days for which patients are entitled to benefits under Medicare Part A for purposes of calculating the Medicare disproportionate share ("DSH") payment.  *See* 69 Fed. Reg. 48916, 49099 (Aug. 11, 2004) ("2004 rule").

2.    Although the 2004 rule has been invalidated by the D.C. Circuit, and the D.C. Circuit has also found that the Secretary cannot enact such a policy absent proper notice-and-comment rulemaking, which has not occurred for the cost reporting periods at issue here, the Secretary has not changed his policy, but is instead has requested a *writ of certiorari* from the Supreme Court of the United States.  *See Allina Health Servs. v. Price*, 863 F.3d 937 (D.C. Cir. 2017) ("*Allina II*"), *petition for cert. filed* (U.S. April 27, 2018) (No. 16-5255).

3.    The Secretary has therefore included these Medicare Advantage days ("Part C days") in the Plaintiffs' Medicare fractions as days for which patients were "entitled to benefits

under Part A." The Secretary also excluded these Part C days from the Plaintiffs' Medicaid fractions, even if the patients were eligible for Medicaid.

4.      Each of the plaintiff hospitals has received an original or revised notice of program reimbursement ("NPR") from its Medicare Administrative Contractor ("MAC") reflecting such hospital's DSH payment determination for the fiscal years at issue.

5.      Plaintiffs contend that the Secretary's policy in connection with the treatment of Part C days during the cost report periods at issue is unlawful because it violates the DSH statute, is arbitrary and capricious, is procedurally invalid for failure to undergo notice-and-comment rulemaking, and contravenes Federal court rulings on the matter.

6.      Accordingly, the Plaintiffs seek the exclusion of Part C days in their Medicare fractions and the inclusion of the Medicaid-eligible portion of those Part C days in the Medicaid fraction.

## II.      PARTIES

7.      The Plaintiffs in this action consist of eight (8) hospitals that participate in the Medicare program. The Plaintiffs in this action are listed below with their Medicare provider numbers and their cost reporting periods at issue in this action, as set forth in their administrative appeals:

(a) Bon Secours DePaul Medical Center, Inc., Medicare Provider No. 49-0011, for hospital fiscal years 2010, 2011, 2012, and 2013;

(b) Bon Secours Maryview Medical Center, Medicare Provider No. 49-0017, for hospital fiscal years 2010, 2011, and 2013;

(c) Bon Secours Memorial Regional Medical Center, Inc., Medicare Provider No. 49-0069, for hospital fiscal years 2010, 2011, 2012, and 2013;

(d) Bon Secours-Richmond Community Hospital, Inc., Medicare Provider No. 49-0094, for hospital fiscal years 2010 and 2011;

(e) Bon Secours-St. Francis Medical Center, Inc., Medicare Provider No. 49-0136, for hospital fiscal years 2010, 2011, and 2012;

(f) Mary Immaculate Hospital, Inc., Medicare Provider No. 49-0041, for hospital fiscal years 2010, 2011, and 2012;

(g) Our Lady of Bellefonte Hospital, Inc., Medicare Provider No. 18-0036, for hospital fiscal years 2009, 2010, 2012, and 2013; and

(h) St. Francis Hospital, Inc., Medicare Provider No. 42-0023, for hospital fiscal years 2009, 2010, 2011, 2012, and 2013.

8.      Defendant Alex M. Azar II is the Secretary of the United States Department of Health and Human Services ("HHS"), and is sued in his official capacity.  HHS is the Federal agency that administers CMS.  CMS is the Federal agency to which the Secretary has delegated administrative authority over the Medicare program, which is established under title XVIII of the Social Security Act.  *See* 42 U.S.C. § 301 *et seq.*  References to the Secretary herein are meant to refer to him, his subordinate agencies and officials, and to his official predecessors or successors as the context requires.

### III.     JURISDICTION AND VENUE

9.      This action arises under the Medicare statute, title XVIII of the Social Security Act, 42 U.S.C § 1395, and the APA, 5 U.S.C. § 551.

10.     Jurisdiction is proper under 42 U.S.C. §§ 1395oo(a)(1)(A)(ii) and 1395oo(f)(1).

11.     Venue is proper in this judicial district under 42 U.S.C. § 1395oo(f)(1).

## IV.    BACKGROUND

### A.    MEDICARE DSH

12.    Part A of the Medicare statute addresses "inpatient hospital services." 42 U.S.C. § l395d(a)(l).  Beginning in 1983, the Medicare program pays most hospitals for the operating costs of inpatient hospital services under the prospective payment system ("PPS").  42 U.S.C. §§ 1395ww(d)(l)-(5); 42 C.F.R. Part 412.  Under PPS, Medicare pays standardized amounts per discharge, subject to certain payment adjustments. *Id.*

13.    The DSH payment is one of those PPS payment adjustments.  *See* 42 U.S.C. § 1395ww(d)(5)(F); 42 C.F.R. § 412.106.  According to statute, a hospital that serves a disproportionate share of low-income patients is entitled to an upward percentage adjustment to the standard PPS rates.  *See* 42 U.S.C. § 1395ww(d)(5)(F); *see also* 42 C.F.R. § 412.106.  A hospital may qualify for a DSH adjustment based on its "disproportionate patient percentage" ("DSH patient percentage").  *See* 42 U.S.C. § 1395ww(d)(5)(F)(i)(I) and (d)(S)(F)(v); 42 C.F.R. § 412.106(c)(l) (2002).  The DSH patient percentage serves as a proxy for utilization by low-income patients, establishes a hospital's qualification as a DSH, and determines the amount of the DSH adjustment.  *See* 42 U.S.C. §§ 1395ww(d)(5)(F)(iv) and (vii)–(xiii); 42 C.F.R. § 412.106(d) (2002).  The DSH patient percentage is comprised of the sum of two fractions expressed as percentages.  42 U.S.C. § 1395ww(d)(5)(F)(vi).

14.    The first fraction, commonly known as the "Medicare fraction" or "SSI fraction" is defined as:

> the fraction (expressed as a percentage), the numerator of which is the number of such hospital's patient days for such period which were made up of patients who (for such days) were *entitled to benefits under part A of this subchapter*

and were entitled to supplemental security income benefits (excluding any State supplementation) under subchapter XVI of this chapter, and the denominator of which is the number of such hospital's patient days for such fiscal year which were made up of patients who (for such days) were *entitled to benefits under part A of this subchapter* . . .

42 U.S.C. § 1395ww(d)(5)(F)(vi)(II) (emphasis added).  The Medicare fraction is computed annually by CMS, and the MACs must use CMS's calculation to compute a hospital's DSH payment adjustment.  *See* 42 C.F.R. §§ 412.106(b)(2)–(3) (2002).

15.    The other fraction is the "Medicaid fraction" and is defined as:

the fraction (expressed as a percentage), the numerator of which is the number of the hospital's patient days for such period which consist of patients who (for such days) were *eligible* for medical assistance under a State plan approved under subchapter XIX [the Medicaid program], but who were *not entitled to benefits under part A of this subchapter*, and the denominator of which is the total number of the hospital's patient days for such period.

42 U.S.C. § 1395ww(d)(5)(F)(vi)(I) (emphasis added).  According to CMS's regulation, it is the MAC's obligation to determine the Medicaid fraction for each provider:  "The [MAC] determines the number of the hospital's patient days of service for which patients were eligible for Medicaid but not entitled to Medicare Part A, and divides that number by the total number of patient days in the same period."  42 C.F.R. § 412.106(b)(4).

## B.    MEDICARE PART C

16.    In 1997, Congress amended the Medicare statute by adding a new Part C. Balanced Budget Act of 1997 ("BBA"), Pub. L. No. 105-33, § 4001, codified at 42 U.S.C. § 1395w-21. Part C governs the Medicare Advantage program (formerly known as the Medicare+Choice program).  After the 1997 amendment, a Medicare beneficiary may elect to receive Medicare benefits "under this subchapter" through one of two means:  "(A) through the

original Medicare fee-for-service program under parts A and B of this subchapter, or (B) through enrollment in a [Medicare Advantage] plan under this part [i.e., part C]."  42 U.S.C. § 1395w-21(a)(l); *see also* 42 C.F.R. § 422.50; 63 Fed. Reg. 34968 (June 26, 1998).  "This subchapter" refers to the Medicare statute in Title XVIII of the Social Security Act.

17.     In order to be eligible to elect enrollment in a Medicare Advantage plan, an individual must be entitled to benefits under Part A of the Medicare statute.  *See* 42 U.S.C. §§ 1395w-21(a)(l), (a)(3)(A).  As defined in the statute, a "Medicare+Choice eligible individual means an individual who is entitled to benefits under part A of this subchapter and enrolled under part B of this subchapter."  42 U.S.C. § 1395w-21(a)(3)(A).

18.     Once a beneficiary elects to enroll in a Medicare Advantage plan, the beneficiary receives Medicare benefits under Part C, 42 U.S.C. § 1395w-21(a)(l)(B), and the Secretary makes payment to the contracted Medicare Advantage plan.  42 U.S.C. § 1395w-21(i).  Subject to certain exceptions not pertinent here, the statute requires the Secretary to make payments to the Medicare Advantage plan under Part C "instead of the amounts which (in the absence of the contract) would otherwise be payable under parts A and B [of the Medicare statute] for items and services furnished to the individual" and provides that "only the [Medicare Advantage] organization shall be entitled to receive payments from the Secretary under this subchapter for services furnished to the individual."  42 U.S.C. § 1395w-21(i)(l)-(2).

### C.     THE SECRETARY'S POLICY ON COUNTING PART C DAYS IN THE DSH CALCULATION

19.     Although the Medicare Advantage program was established in 1997, the Secretary did not publish any rule or instruction governing how to count these Part C days in the Medicare DSH calculation until 2003.  Prior to that time, "the Secretary treated Part C patients as

not entitled to benefits under Part A." *Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1106 (D.C. Cir. 2014) ("*Allina I*").   From 1986 through 2004, the Secretary interpreted the term "entitled to benefits under Part A" to mean covered, or paid, by Medicare Part A.  *See id*. at 1108 (describing the agency's "policy . . . of excluding Part C days from the Medicare fraction and including them in the Medicaid fraction"); *id.* at 1106 ("Prior to 2003, the Secretary treated Part C patients as not entitled to benefits under Part A").

20.    In a 2003 notice of proposed rulemaking, the Secretary addressed "questions whether patients enrolled in a [Medicare Advantage] Plan should be counted in the Medicare fraction or the Medicaid fraction . . . ."   68 Fed. Reg. 27154, 27208 (May 19, 2003).   In response to these questions, the Secretary stated that "once a beneficiary has elected to join a [Medicare Advantage] plan, that beneficiary's benefits are no longer administered under Part A."  *Id.*  Thus, the Secretary proposed "to clarify that once a beneficiary elects Medicare Part C, those patient days attributable to the beneficiary should not be included in the Medicare fraction of the DSH patient percentage.   These patient days should be included in the count of total patient days in the Medicaid fraction (the denominator), and the patient's days for the Medicare Advantage beneficiary who is also eligible for Medicaid would be included in the numerator of the Medicaid fraction."   *Id.*  The Secretary proposed to amend the existing DSH regulation to effectuate this clarification of the existing rule.   *See id.* at 27229–30 (proposing amendments to DSH regulation at § 412.106 in order to accomplish several proposed changes to the rule). However, the final rule published on August 1, 2003 did not include this or other aspects of the

2003 proposed rule relating to the DSH payment. *See* 68 Fed. Reg. 45346, 45422 (Aug. 1, 2003).

21.    A year later, the Secretary published another final rule adopting a policy change with respect to the counting of Medicare Part C days in the Medicare DSH payment calculation. *See* 69 Fed. Reg. at 49099, 49246; see *also* 72 Fed. Reg. 47130, 47384 (Aug. 22, 2007) (discussing the 2004 "policy change"). In this final rule, the Secretary "adopt[ed] a policy" and "revis[ed]" the DSH regulation to begin to count Medicare Advantage patient days as Medicare Part A patient days in the SSI fraction, effective October 1, 2004. 69 Fed. Reg. at 49099. The adoption of this new policy was accomplished by deleting the word "covered" where it previously appeared in the definition of the Medicare fraction in 42 C.F.R. § 412.106(b)(2)(i). *See id.*; *compare* 42 C.F.R. § 412.106(b)(2)(i) (2002) with 69 Fed. Reg. at 49246 (revised text of § 412.106(b)(2)(i)). The Secretary also declined to adopt his proposal to include Part C days in the Medicaid fraction. 69 Fed. Reg. at 49099.

22.    The Secretary's sole explanation for the agency's 2004 determination to begin counting Medicare Part C days as Medicare Part A days in the SSI fraction (effective October 1, 2004) was that Medicare Advantage enrollees "are still, in some sense, entitled to benefits under Medicare Part A." 69 Fed. Reg. at 49099. It necessarily follows based on identical statutory text related to both fractions ("entitled to benefits under part A") that the Secretary's policy to include such days in the SSI fraction also entails their exclusion in the Medicaid fraction, to the extent dually eligible for Medicaid.

23.     But, the Secretary has never explained in what "sense" Medicare Advantage enrollees are "entitled to benefits under Part A."  *See Allina Health Servs. v. Sebelius*, 904 F. Supp. 2d 75, 94 (D.D.C. 2012), *aff'd in part, rev'd in part*, 746 F.3d 1102 (D.C. Cir. 2014) (holding that "an agency must cogently explain why it has exercised its discretion in a given manner" and that "[i]n this case, the Secretary failed to do so").

24.     In 2007, the Secretary published in the Federal Register notice of a further change to the DSH regulation, which was adopted without advance notice or opportunity for comment.  *See* 72 Fed. Reg. at 47384.  The 2007 notice stated that the agency "inadvertently" failed to change the text of the regulation in 2004 to the extent necessary "to conform to the preamble language."  *Id.*  Accordingly, the Secretary decided to make a "technical correction" to the text of Section 412.106(b)(2) in order to effectuate "the policy iterated in that [2004] rule."  *Id.*  Following that correction, the portion of the regulation defining the numerator and denominator of the SSI fraction now refers to patients who are "entitled to Medicare Part A (or Medicare Advantage (Part C))."  *Id.* at 47411 (amending § 412.106(b)(2)(i)(B) and (iii)(B)).

25.     Effective October 1, 2013, the Secretary underwent a new round of notice-and-comment rulemaking as to his Part C DSH policy, purporting to fix the procedural errors discussed below and claiming to "readopt" the 2004 policy.  *See* 78 Fed. Reg. 50496, 50614 (Aug. 19, 2013).  The Plaintiffs here only appeal cost reporting periods pre-dating October 1, 2013, and the Secretary's 2013 rulemaking is not challenged herein.

    D.     *ALLINA I & ALLINA II* LITIGATION

26.     The United States Court of Appeals for the District of Columbia held that the policy regarding Part C days adopted by CMS in 2004 was "deficient" from a notice standpoint

and was therefore vacated. *Allina I,* 746 F.3d at 1111. In particular, the Court of Appeals agreed

with this Court that "an agency must cogently explain why it has exercised its discretion in a

given manner" and that "[i]n this case, the Secretary failed to do so . . . ." *See Allina Health

Servs. v. Sebelius,* 904 F. Supp. 2d at 94; *see also FCC v. Fox TV Stations, Inc.,* 129 S. Ct. 1800,

1811 (2009) (agencies "may not . . . depart from a prior policy *sub silentio* or simply disregard

rules that are still on the books"). The holding was based on the fact that CMS's explanation for

its policy change was limited to the following cursory statement: "once Medicare beneficiaries

elect Medicare Part C coverage, they are still, in some sense, entitled to benefits under Medicare

Part A." 69 Fed. Reg. at 49099.

27.     In addition, as the court in *Allina I* also held, the agency violated the notice-and-

comment rulemaking requirements of the APA and the Medicare statute because the new rule

adopted in 2004 was the opposite of the rule proposed by the Secretary in 2003, and the public

was not afforded adequate notice of, or a meaningful opportunity to comment upon, the rule that

the agency actually adopted. *See Allina I,* 746 F.3d at 1108 ("agencies may not pull a surprise

switcheroo on regulated entities . . . [and] [t]he word clarify does not suggest that a potential

underlying major issue is open for discussion") (internal citations omitted).

28.     The court remanded to the CMS Administrator to decide, in the absence of the

vacated 2004 rule, how Part C days should be treated for the purposes of DSH. On December 2,

2015, the Administrator issued a decision, simply reaffirming the Secretary's prior position and

concluding that the same policy could be adopted even in absence of the 2004 regulation. *See

Allina Health Servs. v. Sebelius*, No. 1:10-cv-01463-RMC, CMS Adm'r Dec. (D.D.C. Dec. 2,

2015). In other words, CMS has continued to include Part C days in the Medicare fraction and

exclude Part C days in the Medicaid fraction, despite not having a valid policy on the books for doing so.

29.     The Secretary's continued treatment of Part C days as "days entitled to Part A" was challenged in *Allina II*.   There, the D.C. Circuit Court again ruled against the Secretary, holding that he does not have authority to adopt this policy absent notice-and-comment rulemaking.   863 F.3d at 944.   Specifically, the court held that the Medicare statute required notice-and-comment rulemaking for any 1) "rule, requirement or other statement of policy" that 2) "establishes or changes" 3) a "substantive legal standard" that 4) governs "payment for services."    *Id*. (citing 42 U.S.C. §§ 1395hh(a)(2), (b)(l)).   Finding that each of these four requirements was met, the D.C. Circuit Court once again invalidated CMS's on-going policy for failure to undertake notice-and-comment rulemaking as required by the Medicare statute.

30.     The Court also stated that the Secretary "could not circumvent this [notice-and-comment] requirement by claiming that it was acting by way of adjudication rather than rulemaking." *Id.* at 945.

31.     The Court also held in the alternative that the Medicare statute specifically addresses how notice-and-comment violations are to be handled and states that such rules are to be treated as mere proposals until the deficiency is cured.  *Id.* (citing 42 U.S.C. § 1395hh(a)(4)).

32.     Although the only fiscal year before the court in *Allina II* was 2012, the logic of the holding applies to all fiscal years prior to the Secretary's 2013 notice-and-comment rulemaking, dating back to the now-vacated 2004 rule.  Moreover, the rationale of the Court's decision, namely that the Secretary had failed to properly adopt a policy that Part C days were entitled to benefits under Part A, necessarily means that if these days are eligible for Medicaid,

they should be included in the Medicaid fraction because they are "entitled to benefits under Part A." The Secretary implicitly acknowledged this in the now-rejected 2004 Federal Register notice. 69 Fed. Reg. at 49099 (not adopting the proposal to include Part C days in the Medicaid fraction).

## E.    THE MEDICARE APPEALS PROCESS

33.    It has always been CMS's policy that: "It is not necessary for hospitals serving a disproportionate number of low income patients . . . to formally apply for a disproportionate share adjustment." 51 Fed. Reg. 31454, 31457 (Sept. 3, 1986). It is unnecessary for a provider to formally claim DSH on the as-filed cost report because the "final determination of a hospital's eligibility for, and amount of, any disproportionate share adjustment will be made by the [MAC] at the time of the year-end settlement of [a] cost report." *Id*. at 31458. But, "[u]pon receipt of the Notice of Program Reimbursement, all hospitals have the right to appeal the [MAC]'s determination." *Id.*

34.    Section 1878(a) of the Social Security Act entitles a provider of services under the Medicare program to a hearing before the Provider Reimbursement Review Board ("PRRB") if three prerequisites are met: (i) the provider is dissatisfied with a final determination of the Secretary as to the amount of the payment under the Medicare Act; (ii) the provider files a request for hearing within 180 days of the final determination (typically an NPR); and (iii) the amount in controversy is at least $10,000 for an individual appeal or $50,000 for a group appeal. 42 U.S.C. § 1395oo(a); 42 C.F.R. § 405.1835. If an appeal satisfies these requirements, the PRRB has jurisdiction to hear the appeal. *Id.*

35.     When the PRRB has jurisdiction to hear an appeal, but the appeal involves a statute, regulation, or policy that the PRRB is without authority to overturn, the PRRB may, through its own motion or upon request of the provider, grant expedited judicial review ("EJR") of the appeal.  42 U.S.C. § 1395oo(f)(1).  If EJR is granted, the provider can seek judicial review in federal court without first having a hearing before the PRRB.  *Id.*  The provider must file its complaint no later than 60 days after receiving notice of the PRRB's decision to grant EJR.  *Id.*

36.     The Medicare statute allows providers to bring a civil action pursuant to the APA through EJR.  *See* 42 U.S.C. § 1395oo(f)(l).

37.     The APA provides that the "reviewing court shall . . . hold unlawful and set aside agency action . . . found to be . . . (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . . (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence[.]"  5 U.S.C. § 706(2).

## V.     PROCEDURAL HISTORY

38.     Pursuant to the procedures set forth at 42 U.S.C. § 1395oo, the Plaintiffs have challenged and are dissatisfied with the Secretary's treatment of Medicare Part C days as described in the preceding paragraphs.  The Plaintiffs filed appeals with the PRRB.  The Plaintiffs' appeals satisfied all jurisdictional requirements for an appeal set forth at 42 U.S.C. § 1395oo(a)-(b).

39.     The PRRB determined that it had jurisdiction to hear the Plaintiffs' appeals, but lacked authority to decide the legal questions at issue in this case.  The PRRB granted EJR for the following of Plaintiffs' appeals:

(a) Bon Secours 2009 DSH SSI Fraction Part C Days CIRP Group, PRRB Case No. 14-1081GC, Exhibit 1;

(b) Bon Secours 2009 DSH Medicaid Fraction Part C Days CIRP Group, PRRB Case No. 14-1084GC, Exhibit 1;

(c) Bon Secours 2010 SSI Fraction Part C Days CIRP Group, PRRB Case No. 14-1591GC, Exhibit 1;

(d) Bon Secours 2010 Medicaid Fraction Part C Days CIRP Group, PRRB Case No. 14-1592GC, Exhibit 1;

(e) Bon Secours 2011 DSH SSI Fraction Part C Days CIRP Group, PRRB Case No. 15-2914GC, Exhibit 1;

(f) Bon Secours 2011 DSH Medicaid Fraction Part C Days CIRP Group, PRRB Case No. 15-2915GC, Exhibit 1;

(g) Bon Secours 2012 DSH SSI Fraction Part C Days CIRP Group, PRRB Case No. 15-3275GC, Exhibit 1;

(h) Bon Secours 2012 DSH Medicaid Fraction Part C Days CIRP Group, PRRB Case No. 15-3276GC, Exhibit 1;

(i) Bon Secours 2013 DSH SSI Fraction Part C Days CIRP Group, PRRB Case No. 16-0229GC, Exhibit 1; and

(j) Bon Secours 2013 Medicaid Fraction Part C Days CIRP Group, PRRB Case No. 16-0230GC, Exhibit 1.

40.    The Plaintiffs now file this civil action within 60 days of the PRRB's EJR decisions, and claim that the Secretary's policy of including Part C days in the Plaintiffs' SSI fractions and excluding Part C days from the Plaintiffs' Medicaid fractions is unlawful for at least the substantive and procedural reasons set forth below.

**COUNT I**
**Violation of the Administrative Procedure Act**
**Failure to Undergo Proper Notice-and-Comment Rulemaking**

41.    The allegations set forth in paragraphs 1 through 40 are incorporated by reference as if fully set forth herein.

42.    The APA proscribes agency action that is "without observance of procedure required by law."  5 U.S.C. § 706(2)(D); *see also* § 706(2)(A).  The APA's procedural requirements include that the Secretary (a) provide a notice of proposed rulemaking, (b) afford interested parties the opportunity to provide comments, and (c) consider those comments before finalizing the rule.  5 U.S.C. § 553(b)-(c).  The Secretary's decision to treat Part C days as "days entitled to Part A" for the purposes of the DSH calculation was adopted in violation of these obligations.

43.    Though the Secretary has engaged in a rulemaking that is effective October 1, 2013, 78 Fed. Reg. at 50619, the Secretary has not engaged in valid rulemaking for the period from the now-vacated 2004 rulemaking through October 1, 2013.  And, prior to the vacated 2004 rulemaking, "the Secretary treated Part C patients as not entitled to benefits under Part A." *Allina I*, 746 F.3d at 1106.

44.    Absent proper rulemaking, this policy therefore remains in effect.  *See also Croplife Am. v. EPA*, 329 F.3d 876, 879 (D.C. Cir. 2003) (vacating a rule and holding that "[a]s a consequence, the agency's previous practice . . . is reinstated and remains in effect unless and until it is replaced by a lawfully promulgated regulation"); *Action on Smoking & Health v. Civil Aeronautics Bd.,* 713 F.2d 795, 797–98 (D.C. Cir. 1983) ("[B]y vacating or rescinding [one rule], the judgment of this court had the effect of reinstating the rules previously in force," which

16

"cannot again be revoked without new rulemaking[.]"); *see also Heartland Reg'l Med. Ctr. v. Sebelius*, 566 F.3d 193, 198 (D.C. Cir. 2009) (explaining that had an earlier district court decision vacated a rule, it "likely would have required HHS to make payments to those hospitals [the challenger hospital and "similarly situated hospitals"] for those [challenged] years and for any subsequent years until the agency repromulgated the same rule and gave an adequate reason for rejecting the alternatives").

45.     The Secretary is procedurally barred by the APA from altering the policy to treat Part C patients as not entitled to benefits under Part A without going through notice-and-comment rulemaking.  Having failed to do so here, the Plaintiffs are subject to a policy that is unlawful and that must be reversed.

## COUNT II
## Violation of the Medicare Statute
## Failure to Undergo Notice-and-Comment Rulemaking

46.     The allegations set forth in paragraphs 1 through 40 are incorporated by reference as if fully set forth herein.

47.     The Social Security Act, 42 U.S.C. § 1395hh(a), also requires the Secretary to utilize public notice-and-comment rulemaking procedures when establishing substantive changes in payment for services covered under the Medicare statute.  The Secretary's decision to treat Part C days as "days entitled to Part A" for the purposes of the DSH calculation was adopted in violation of his obligations under Section 1395hh.

48.     The Medicare statute provides that "[n]o rule, requirement, or other statement of policy . . . that establishes or changes a substantive legal standard governing . . . the payment for services . . . shall take effect unless it is promulgated by the Secretary by regulation."  42 U.S.C.

§ 1395hh(a)(2).  In *Allina II*, the D.C. Circuit held that the Secretary did not have authority to adopt its 2004 policy absent notice-and-comment rulemaking because, *inter alia*, the policy was, indeed, a substantive legal standard.  863 F.3d at 944.

49.     The Secretary's treatment of Part C days is also invalid because the Medicare statute states that a final rule that "is not a logical outgrowth of a previously published notice of proposed rulemaking . . . , such provision shall be treated as a proposed regulation and shall not take effect."  42 U.S.C. § 1395hh(a)(4).  Here, the Secretary has violated this provision by inappropriately applying the 2004 rule not as a "proposed regulation," but rather with the force and effect of law to the cost years at issue as if the rule had been properly promulgated.  *See Allina I*, 746 F.3d at 1109 (finding that "the Secretary's final [2004] rule was not a logical outgrowth of the proposed rule.").

50.     As vacated, the pre-2004 version of the DSH rule remains in place, meaning that Part C days are not to be treated as days "entitled to Part A."  The Secretary is procedurally barred by the Medicare statute from altering that policy without going through notice-and-comment rulemaking.  *See Allina II*, 863 F.3d at 943-44.  Like the hospitals in *Allina II*, the Plaintiffs are subject to a policy that is unlawful and that must be reversed.

**COUNT III**
**Violation of the Administrative Procedure Act**
**Arbitrary and Capricious Agency Action**

51.     The allegations set forth in paragraphs 1 through 40 are incorporated by reference as if fully set forth herein.

52.     The APA permits judicial review of agency actions, findings, and conclusions that are "arbitrary, capricious," or "an abuse of discretion."  5 U.S.C. § 706(2)(A).

53.     The Secretary's application of the DSH statute is arbitrary and capricious because it interprets the term "entitled" in the same section of the Social Security Act in various and inconsistent ways that reduce DSH payments to hospitals.  *See* 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I) (including in the SSI fraction days for patients "entitled to benefits under part A" and "entitled to supplemental security income benefits").  That is, he defines "entitlement" to SSI benefits to consist of the absolute right to payment of SSI benefits, but "entitled" as it relates to benefits under Medicare Part A in the opposite manner (i.e., regardless of whether Part A actually makes payment for those days.).  *See* 75 Fed. Reg. 50041, 50280-81 (Aug. 16, 2010) (the Secretary interpreting the statutory term "entitled" as it relates to SSI benefits to include only those days for patients who were entitled to have SSI benefits paid to them on those days).

54.     This differing treatment is arbitrary and capricious and must be set aside.  *See Walter O. Boswell Mem'l Hosp., v. Heckler,* 749 F.2d 788, 799 (D.C. Cir. 1984) ("It would be arbitrary and capricious for [the Secretary] to bring varying interpretations of the statute to bear, depending upon whether the result helps or hurts Medicare's balance sheets").

## COUNT IV
### Violation of the Administrative Procedure Act
### Arbitrary and Capricious Agency Action

55.     The allegations set forth in paragraphs 1 through 40 are incorporated by reference as if fully set forth herein.

56.     The APA permits judicial review of agency actions, findings, and conclusions that are "arbitrary, capricious," or "an abuse of discretion."  5 U.S.C. § 706(2)(A).

57.     The Secretary's application of the DSH statute is arbitrary and capricious because it impermissibly conflates two terms (eligible and entitled).  *See* 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II) (including in the Medicaid fraction patients "eligible for medical

assistance under a [Medicaid] State plan" . . . "but who were not entitled to benefits under part A").

58.     The Secretary has construed the DSH statute to mean that Part C beneficiaries remain entitled to Part A simply by meeting the eligibility criteria for enrolling in Part A, therefore reading the broader term "eligible" too narrowly to mean the exact same thing as "entitled."  This reading is invalid.  *See, e.g., Cabel Huntington Hosp. v. Shalala*, 101 F.3d 984, 987–88 (4th Cir. 1996) (rejecting the Secretary's attempts to conflate these two terms).

**COUNT V**
**Violation of the Administrative Procedure Act**
**Agency Action Not In Accordance with Law, In Excess of Statutory Authority**

59.     The allegations set forth in paragraphs 1 through 40 are incorporated by reference as if fully set forth herein.

60.     The APA permits judicial review of agency actions, findings, and conclusions that are "not in accordance with law" or are "in excess of statutory jurisdiction, authority, or limitations."  5 U.S.C. §§ 706(2)(A), 706(2)(C).

61.     The Secretary's treatment of Part C days as Part A days is unlawful because it violates the plain meaning of the Medicare DSH statute regarding the phrase "entitled to benefits under part A" in 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I)-(ii).

62.     Once an individual elects to enroll in a Part C plan, he or she "is entitled to receive benefits under [the Medicare statute] . . . through enrollment in a [Medicare Advantage] plan under this part [i.e., Part C]."  42 U.S.C. § 1395w-21(a)(1)(B).  Further, payments to the Medicare Advantage plan are "instead of the amounts which . . . would otherwise be payable

under parts A and B for items and services furnished to the individual."  42 U.S.C. § 1395w-21(i)(1).

63.     Under the plain meaning of this statutory language, Part C beneficiaries are not entitled to benefits under Part A because they are not entitled to have payment made under Part A.  *See* 68 Fed. Reg. at 27208 ("one a beneficiary has elected to join a [Medicare Advantage[ plan, that beneficiary's benefits are no long administered under Part A"); *Northeast Hosp. Corp. v. Sebelius*, 699 F. Supp. 2d 81, 93 (D.D.C. 2010) (reasoning that under the Medicare statute, for a beneficiary to be entitled to benefits under Part A, that individual must be entitled to payment under Part A for the patient days in question).

## VI.    RELIEF REQUESTED

64.     The Plaintiffs request an Order:

(a) Declaring invalid and enjoining the Secretary from applying any policy of treating Part C days as Part A days for purposes of calculating Medicare DSH calculation for the periods at issue;

(b) Directing the Secretary to calculate the Plaintiffs' DSH payments consistent with that Order and to make prompt payment of any additional amounts due the Plaintiffs plus interest calculated in accordance with 42 U.S.C. § 1395oo(f)(2);

(c) Requiring the Secretary to pay legal fees and cost of suit incurred by the plaintiff Hospitals; and

(d) Providing such other relief as the Court may consider appropriate.

Respectfully submitted,


/s/ Daniel J. Hettich
Daniel J. Hettich
  D.C. Bar No. 975262
Elizabeth N. Swayne
  D.C. Bar No. 1029380
KING & SPALDING LLP
1700 Pennsylvania Avenue, N.W.
Suite 200
Washington, D.C.  20006
(202) 737-0500 (phone)
202.626.3737 (fax)
DHettich@kslaw.com

*Attorneys for Plaintiffs*


Date:  October 2, 2018